Anthony GRILLO, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 98–CV–485.

District of Columbia Court of Appeals.

Submitted May 18, 1999.
Decided June 3, 1999.

Jerry R. Goldstein, filed a brief, for appellant.

John M. Ferren, Corporation Counsel at the time the brief was filed, Charles L. Reischel, Deputy Corporation Counsel, and Mary T. Connelly, Assistant Corporation Counsel, filed a brief, for appellee.

Before TERRY and SCHWELB, Associate Judges, and KERN, Senior Judge.

SCHWELB, Associate Judge:

Anthony Grillo appeals from an order of the trial court dismissing his complaint against the District of Columbia for fraud and negligent misrepresentation. The trial judge held that she lacked subject matter jurisdiction over the action and that Grillo's grievance should have been presented to the Office of Employee Appeals (OEA). Grillo contends, to the contrary, that his allegations do not fall within the jurisdiction of the OEA and that the complaint was erroneously dismissed. We remand the case for an initial determination by the OEA as to whether it has jurisdiction over the matter.

## I.

Grillo alleged in his complaint that in 1996, while he was employed by the District of Columbia Department of Corrections (DOC), he applied for a position with the Metropolitan Police Department (MPD). Grillo was advised by the investigator assigned to his case, Roxanne Jenkins, that his driving record presented a problem with respect to the viability of his application. That record included five speeding tickets and a charge of operating after suspension (OAS). The OAS charge followed the suspension of Grillo's license in Virginia for an unpaid ticket and the revocation of his license in Maryland after Grillo had failed to appear for a hearing in Maryland to explain the Virginia suspension.

Grillo alleged that, at Ms. Jenkins' direction, he provided a written explanation of the circumstances of his driving violations. According to Grillo, Ms. Jenkins thereafter orally advised him that the issue regarding his driving record had been resolved, that he had been accepted into a Police Academy class for new recruits, and that he should resign from his then-current job. Grillo also received a conditional employment letter from the MPD. Grillo asserted that in reliance on Investigator Jenkins' assurance, he submitted his resignation to the DOC. Subsequently, however, after some administrative delay, Grillo was notified by the MPD that his application had been rejected on account of his driving record.

On November 12, 1997, Grillo filed this action in the Superior Court. On March 10, 1998, the trial judge dismissed the complaint in a written order. This appeal followed.

## II.

■■■ Most employment disputes between the District of Columbia and its employees are governed by the Comprehensive Merit Personnel Act (CMPA), D.C.Code §§ 1–601.1 *et seq.* (1992). When a claim is cognizable under the CMPA, that statute provides the complainant with his or her exclusive remedy, and suits in tort are generally preempted. *See, e.g., District of Columbia v. Thompson,* 593 A.2d 621, 635 (D.C.) (on petition for rehearing) (*Thompson II*), *cert. denied,* 502 U.S. 942, 112 S.Ct. 380, 116 L.Ed.2d 331 (1991), *modifying in part* 570 A.2d 277 (D.C.1990) (*Thompson I*). The Office of Employee Appeals has appellate jurisdiction over claims against the District arising under the CMPA. *See* D.C.Code § 1–606.3. We have held, however, that "public employees do not lose their common law rights to sue for the[ir] injuries ... [when] neither those injuries nor their consequences trigger the exclusive provisions of the CMPA." *King v. Kidd,* 640 A.2d 656, 664 (D.C.1993) (alterations in original) (citation omitted).

Relying on language in *Thompson II,* 593 A.2d at 625, and in *District of Colum-*

bia Metro. Police Dep't v. Perry, 638 A.2d 1138, 1139 (D.C.1994), Grillo asserts that the CMPA governs grievances by District of Columbia employees, but not common law tort claims filed by applicants for employment. The plaintiffs in Thompson and Perry were District employees, however, and although each of these opinions referred to the CMPA's applicability to employees, neither case addressed the question whether the OEA is the proper forum for claims of this kind by rejected applicants for employment. The question before us thus appears to be one of first impression in this jurisdiction.

■ The language of the CMPA is likewise inconclusive. The provision defining the CMPA's coverage states that the Act shall apply, with certain exceptions not here relevant, to "employees of the District of Columbia government." D.C.Code § 1–602.1(a). The coverage provision thus makes no reference to applicants for employment. Moreover, as defined in the Act, "[t]he term 'employee' means, except when specifically modified in this chapter, an individual who performs a function of the District government and who receives compensation for the performance of such services." D.C.Code § 1–603.1(7). A rejected applicant for employment is not a person who performs a District government function or who receives compensation for performing one.[1]

The CMPA explicitly contemplates, on the other hand, that applicants for employment may file grievances, and directs that rules and regulations for such grievances be promptly issued. See D.C.Code § 1–617.2. Moreover, the statutory purposes are broadly defined to include the creation of a flexible system of public personnel administration which shall "[e]stablish the

means to recruit, select, develop, and maintain an effective and responsive work force consistent with merit principles." D.C.Code § 1–601.2(a)(7). Because it is generally applicants for employment who are recruited and selected, this language suggests that the CMPA was intended to apply to applicants.

The regulations promulgated pursuant to the statute define "grievances" as including "complaints of applicants for employment with the District government." 39 D.C.Reg. 7430 (1992).[2] Under the regulations, OEA's jurisdiction over final agency decisions extends to grievances brought by applicants for employment. See 39 D.C.Reg. 7406. There are exclusions from coverage, however, for "termination of an employee serving a probationary period," 34 D.C.Reg. 1877 (1987), and for "nonselection for appointment or promotion from a group of candidates who were properly ranked and certified." 34 D.C.Reg. 1878.

We have held that if a "substantial question" exists as to whether the CMPA applies, the Act's procedures must be followed, and the claim must initially be submitted to the appropriate District agency. See Thompson I, supra, 570 A.2d at 285.[3] The plaintiff "may then sue the District only if the claim is disallowed." Id. A "substantial question arises unless the injury is 'clearly' not compensable under CMPA." Id. (citation omitted).

■ The determination whether the OEA has jurisdiction is "quintessentially a decision for the OEA to make in the first instance." Taggart–Wilson v. District of Columbia, 675 A.2d 28, 29 (D.C.1996). In light of the statutory provisions and regulations summarized above, Grillo's claim is at least arguably cognizable under the

---

1. At the time of his initial application, Grillo was a District employee who worked for the DOC. The present action, however, was based on his rejected application for employment with the MPD, and his former status with the DOC is irrelevant.

2. The OEA's regulations apparently have not yet been included in the District of Columbia Municipal Regulations (DCMR).

3. This portion of the Thompson I opinion remained in effect following rehearing. See Thompson II, supra, 593 A.2d at 635.

CMPA. Any final decision by this court as to coverage should therefore be deferred until the OEA has had an opportunity to construe the statute that it is charged with administering and to determine whether the CMPA applies to Grillo's complaint.

In our view, however, the trial judge's dismissal of the action was premature, for the suit may proceed if the OEA concludes that it lacks jurisdiction. We therefore vacate the order of dismissal and remand the case to the trial court with directions to stay proceedings in the Superior Court action. The case must then be further remanded to the OEA for a determination as to that agency's jurisdiction. If the OEA concludes that it has jurisdiction, it shall proceed to the merits.[4]

*So ordered.*[5]

---

4. In light of our disposition, we do not address the District's contention that the suit must fail on the merits.

5. Although the District claims that the OEA had exclusive jurisdiction over Grillo's grievance, the MPD did not advise Grillo that he

had the right to appeal to the OEA. *See* D.C.Code § 1–606.4(e). The belated submission of the controversy to the OEA must therefore be deemed to be timely. *See, e.g., Montgomery v. District of Columbia,* 598 A.2d 162, 167 (D.C.1991).